UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　Plaintiff,<br><br>vs.<br><br>SANTIAGO RODRIGUEZ-APARICIO,<br><br>　　　　　　　　Defendant. | Case No. 2:09-cr-00060-PMP-PAL<br><br>**REPORT OF<br>FINDINGS AND RECOMMENDATION**<br><br>(M/Suppress - Dkt. #18) |

Before the court is the defendant's Motion to Suppress (Dkt. #18) which was referred to the undersigned for findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. The court has considered the motion, the government's Response (Dkt. #21), and defendant's Reply (Dkt. # 25).

**BACKGROUND**

The defendant Santiago Rodriguez-Aparicio ("Rodriguez") is charged in an indictment returned February 18, 2009 with deported alien found unlawfully in the United States in violation of 8 U.S.C. § 1326; unlawful alien in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(5)(A) and 924(a)(2); and felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). In an Order (Dkt. #27) entered July 1, 2009, the district judge granted the government's motion to dismiss count one.

The indictment arises out of his arrest on January 24, 2009 when he was riding as a passenger in a friend's car. The car was pulled over in a traffic stop for an unsafe lane change. During the course of the traffic stop, Rodriguez reportedly fled from the car, and while being pursued, dropped a firearm. When he was arrested, Rodriguez had ammunition on his person, and he made admissions that he was in the country illegally. The Central Index System was searched which determined he had been

previously deported from the United States, and his fingerprints were enrolled into the Automated Fingerprint Identification System, resulting in a match with the FBI record number belonging to him.

In the current motion, he seeks to suppress evidence derived from the traffic stop on several grounds. First, he argues that the traffic stop was made without reasonable suspicion to believe a traffic offense had occurred. The Arrest Report does not specify any particular provision of N.R.S. under which the driver was stopped, but it states that he changed from lane one to lane three without using his turn indicator. Rodriguez asserts that N.R.S. § 484.343 is the statute that applies and that it only requires a driver to signal before changing lanes if another vehicle may be affected. No other vehicle was in close proximity to the vehicle in which Rodriguez was riding, and, therefore, the traffic stop was based on a mistaken belief that a traffic infraction had occurred and violated the Fourth Amendment. Thus, all evidence derived from the traffic stop must be suppressed. Specifically, Rodriguez seeks to suppress evidence of his identity, as well as the firearm and ammunition.

The government opposes the motion, asserting the initial traffic stop for an unsafe lane change was a violation of N.R.S. § 484.305 which requires a signal before making a lane change on a highway which has two or more clearly marked lanes for traffic traveling in one direction. Alternatively, the government argues that because the patrol car was behind the driver, a signal was required even under the statute the defendant cites, N.R.S. § 484.343. The government also argues that even if the stop was not based on reasonable suspicion or probable cause, the attenuation exception to the exclusionary rule applies, and any evidence obtained from Rodriguez is admissible. The government asserts that the driver of the car did not immediately pull over after the officer turned on his overhead light to stop the vehicle. The officer initiating the traffic stop requested backup because the three male occupants of the vehicle were acting suspiciously, and the stop occurred in a high gang crime area. When a second patrol unit arrived, the initiating officer instructed the passengers to remain in the car while he escorted the driver of the vehicle to the patrol car to interview him. While the driver was being interviewed, Rodriguez reportedly got out of the car and fled on foot in the opposite direction of the patrol vehicle. During the officers' foot pursuit, Rodriguez was observed removing a pistol from his waistband and throwing it to the ground. Rodriguez was apprehended and taken into custody. In a search incident to his arrest, ammunition matching the caliber of the discarded weapon was found on his person.

According to the government, the driver of the vehicle identified Rodriguez to the officers who then conducted a records check which revealed Rodriguez had a felony conviction for carrying a concealed weapon in a vehicle.

The government argues that by throwing the firearm to the ground, Rodriguez abandoned the property and, therefore, lost any privacy interests in the firearm. Additionally, his conduct, flight, and the officers' observations created probable cause for Rodriguez's arrest independent of the initial traffic stop. Finally, the government argues that even if the initial stop of the vehicle was illegal, Ninth Circuit precedent clearly establishes that evidence of his identity is never itself suppressible as the fruit of an unlawful arrest.

In reply, Rodriguez argues that the provisions of N.R.S. §§ 484.305 and 484.343 must be construed in "*pari materia*," *i.e.*, to supplement each other unless the legislative history or purpose suggests material differences. He argues that these two statutes are "seemingly indistinguishable" from one another, and the court should construe them to mean that signaling is only required when another vehicle may be affected by a vehicle's movement. Because there is no evidence that any traffic was affected by the driver's failure to signal from going from the number one lane to the number three lane, the officer lacked probable cause to conduct a traffic stop. He also argues that discovery of evidence which flowed from his illegal detention must be suppressed unless the taint of his illegal detention was sufficiently attenuated. The temporal proximity between his illegal seizure and the recovery of the firearm is a factor the court should consider in finding that the stop and discovery of the gun were too closely connected in time to apply the attenuation doctrine. Additionally, Rodriguez argues that his flight is not an intervening circumstance that dissipates the taint of his illegal detention. He also argues "the police may have acted with flagrant illegality, and the police officers' purpose for the stop conceivably could have been to travel on a fishing expedition for evidence." Reply (Dkt. #25), 5:23-24. Finally, he acknowledges that a defendant who voluntarily abandons property has no standing to contest its search and seizure. However, he argues that because he fled after he was illegally seized in a traffic stop, he did not voluntarily abandon his property because an abandonment resulting from a Fourth Amendment violation is not voluntary as a matter of law.

/ / /

# DISCUSSION

The Fourth Amendment secures "the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." U.S. Const. amend. IV. The Fourth Amendment protects reasonable and legitimate expectations of privacy. Katz v. United States, 389 U.S. 347 (1967). The Fourth Amendment protects "people not places." Id. Evidence obtained in violation of the Fourth Amendment, and evidence derived from it may be suppressed as the "fruit of the poisonous tree." Wong Sun v. United States, 371 U.S. 471 (1963).

As an initial matter, neither side requested an evidentiary hearing or claimed that there are any contested factual issues which require one. Rodriguez has attached a copy of the Arrest Report to support his statement of facts. The government's response relies on the same Arrest Report to provide additional information supporting the officers' conduct in the stop which Rodriguez does not challenge in his reply. As the parties have not requested an evidentiary hearing and do not contend that there are any material disputes concerning the facts, the court will decide this motion on the parties' moving and responsive papers.

**I.     The Stop of the Vehicle**

The Fourth Amendment "prohibition against unreasonable searches and seizures extends to the investigatory stop of a vehicle." United States v. Sigmond-Ballesteros, 247 F.3d 943, 946 (9th Cir. 2001) (citing United States v. Brignoni-Ponce, 422 U.S. 873, 878 (1975)). The Fourth Amendment requires reasonable suspicion, not probable cause, to conduct a traffic stop. United States v. Lopez-Soto, 205 F.3d 1101, 1105 (9th Cir. 2000). An officer making an investigatory stop of a vehicle "must have at least a reasonable suspicion of criminal misconduct before detaining a driver." United States v. Rojas-Millan, 234 F.3d 464, 468 (9th Cir. 2000) (citing Delaware v. Prouse, 440 U.S. 648, 653 (1979)). As long as there is an objectively reasonable basis to perform a traffic stop, the stop will be permitted by the Fourth Amendment. United States v. Morales, 252 F.3d 1070, 1074 (9th Cir. 2001) (citing Whren v. United States, 517 U.S. 806, 813 (1996)). The Ninth Circuit defines "reasonable suspicion" as "a particularized and objective basis for suspecting the particular person stopped of criminal activity." United States v. Twilley, 222 F.3d 1092, 1095 (9th Cir. 2000) (citing United States v. Thomas, 211 F.3d 1186, 1189 (9th Cir. 2000). Reasonable suspicion requires "specific articulable facts

which, together with objective and reasonable inferences, form a basis for suspecting that a particular person is engaged in criminal conduct." Id.

Four United States Supreme Court decisions have cumulatively applied Terry v. Ohio, 392 U.S. 1 (1968), investigatory stops to traffic-stop settings: Pennsylvania v. Mimms, 434 U.S. 106 (1977) (per curiam); Maryland v. Wilson, 519 U.S. 408 (1997); Brendlin v. California, 551 U.S. 249 (2007); and Arizona v. Johnson, 129 S. Ct. 781 (2009). In Mimms, the Supreme Court held that officers conducting a lawful traffic stop may order the driver to get out of the vehicle without violating the Fourth Amendment. 434 U.S. at 111. The court reasoned that the government's "legitimate and weighty" interest in officer safety outweighed the "*de minimis*" additional intrusion of requiring a driver who was lawfully stopped to get out of his vehicle. Id. at 110-111. Additionally, once outside of a stopped vehicle, a driver may be patted down for weapons if the officer reasonably concludes that the driver "might be armed and presently dangerous." 430 U.S. at 112.

Wilson applied the *Mimms* rule to passengers, as well as drivers. The Supreme Court held that "an officer making a traffic stop may order passengers to get out of the car pending completion of the stop." 519 U.S. at 415. The Wilson decision was based on the same rationale – that the weighty interest in officer safety outweighs the *de minimis* additional intrusion of requiring the passenger to get out of the car. Id. at 413. The Supreme Court acknowledged that in a typical lawful traffic stop, there is generally no reason to stop or detain a passenger of a vehicle lawfully stopped. Id. However, the court emphasized that the risk of a violent encounter in a traffic-stop setting "stems not from the ordinary reaction of a motorist stopped for a speeding violation, but from the fact that evidence of a more serious crime might be uncovered during the stop." Id. at 414. In the Wilson decision, the Supreme Court also observed that as a practical matter, passengers are already stopped when a vehicle is stopped and, therefore, the additional intrusion of stopping the passenger in a lawfully stopped vehicle is minimal. Id. at 415.

In Brendlin, the Supreme Court found that a passenger pulled over in a lawful traffic stop is seized from the moment the car is pulled over on the side of the road and may, therefore, challenge the constitutionality of the stop. 551 U.S. at 251. Everyone in a vehicle pulled over in a traffic stop is seized for the duration of a traffic stop. Id. at 255-56. Finally, in Johnson, the Supreme Court held the

5

occupants of a vehicle pulled over in a lawful traffic stop may be detained for the duration of the traffic stop even if the officers lack cause to believe any occupant of the vehicle is involved in criminal activity. 129 S. Ct. at 784. Similarly, occupants of a vehicle pulled over in a lawful traffic stop may be patted down if the officers have "reasonable suspicion that the person subjected to the frisk is armed and dangerous." Id.

Rodriguez claims the police lacked reasonable suspicion to pull the driver of the car over because the driver did not violate N.R.S. 484.343. That statute provides:

> A driver shall not turn a vehicle from a direct course upon a highway unless and until such movement can be made with reasonable safety, and then only after giving a clear audible signal by sounding the horn if any pedestrian may be affected by such movement and after giving an appropriate signal if any other vehicle may be affected by such movement.

Id.

Rodriguez claims that because no other vehicle was in appreciable distance of the car he was riding in, no other car was affected by the driver's failure to use his turn signal, and there was no violation of N.R.S. 484.343. The government asserts that the driver of the car violated N.R.S. 484.305, which provides, in relevant part:

> If a highway has two or more clearly marked lanes for traffic traveling in one direction, vehicles must:...(b) Not be moved from that lane until the driver has given the appropriate turn signal and ascertained that such movement can be made with safety.

Id.

Alternatively, the government argues that even if N.R.S. 484.343 applies, the driver violated the statute because the officer who made the stop was near enough to require the driver to signal.

The parties do not dispute that the driver of the car failed to use his turn signal when changing from the number one lane to the number three lane. The Arrest Report is attached as Exhibit A to the motion and does not specify the statute under which the car was pulled over. It simply states, "The red car was traveling in the number one lane, and changed to the number three lane without signaling." Rodriguez does not dispute statements made in the Arrest Report that the driver did not immediately pull over to the right and stop after the officer initiated his overhead red and blue lights. Rodriguez also does not dispute the officer's report that the driver made two left-hand turns before pulling over or that as the officer approached the vehicle, he observed a passenger in the vehicle was concealing his hands

in the center console area as if hiding something. It is, therefore, undisputed that the vehicle was traveling on a road with at least three lanes, and the driver failed to use his turn signal when changing lanes. The court finds the officer had reasonable suspicion to conduct a traffic stop after observing the vehicle change from the number one lane to the number three lane, coupled with the driver's failure to pull over after the officer initiated his overhead lights. The initial stop did not violate Rodriguez's Fourth Amendment rights as a passenger in a vehicle stopped on reasonable suspicion.

## II. The Attenuation Exception

Assuming *arguendo* that the officer lacked reasonable suspicion to stop the vehicle in which Rodriguez was a passenger, evidence recovered from Rodriguez is admissible if the causal connection between the illegal conduct and the acquisition of the evidence is sufficiently attenuated. The court must determine whether the evidence recovered from Rodriguez was obtained through exploitation of a constitutional violation or by means sufficiently attenuated from the constitutional violation to "purge" the evidence of its initial taint. Wong Sun v. United States, 371 U.S. 471, 488 (1963). In determining whether the causal chain is sufficiently attenuated, the court examines three factors: (1) the time elapsed between the constitutional violation and the acquisition of the evidence; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the official misconduct. Brown v. Illinois, 422 U.S. at 603-04.

Examining the first factor, in the absence of a record that substantial time elapsed between the time of the initial stop and Rodriguez's flight, the court will assume for purposes of this report and recommendation that a short period of time elapsed and find that the first factor weighs in favor of Rodriguez. However, the second factor clearly weighs in favor of the government. Rodriguez was a passenger in a vehicle pulled over in a traffic stop. The officer who initiated the traffic stop, Goodrich, immediately requested another unit to respond. After the additional patrol unit arrived on the scene, Goodrich initiated contact with the driver. As Goodrich made contact with the driver at the front of the patrol vehicle, Rodriguez got out of the vehicle and ran in the opposite direction of the patrol vehicle. Goodrich pursued on foot, yelling at Rodriguez to stop. Rodriguez did not stop as ordered, and during the foot pursuit, reached into his waistline, retrieved an object, and threw it to the ground. The object made a metallic "clank" sound, and when Goodrich passed it during his foot pursuit, recognized it as a

1  small pistol. Goodrich was able to take Rodriguez into custody during the foot pursuit and recovered a
2  .38 caliber round of ammunition in his right hand. Eleven additional rounds of .38 caliber ammunition
3  were found in his left front pocket. Under these circumstances, the court finds that Rodriguez's
4  unprovoked flight and conduct during the foot pursuit constituted intervening circumstances that
5  sufficiently attenuated the taint of any alleged unlawful stop.

6        The Ninth Circuit has held that with respect to the second factor, "intervening circumstances
7  that militate in favor of attenuation must be sufficiently important to ensure that potentially tainted
8  evidence was 'come at by way of' some process other than the exploitation of an illegal [stop]." United
9  States v. Crawford, 323 F.3d 770, 720 (9th Cir. 2003) (citing Wong Sun, 371 U.S. at 487-88). The
10 Ninth Circuit has held that an "intervening, completely self-motivated decision of a putative defendant
11 to inculpate himself is so unforeseeable an event, from the arresting officers vantage point, that
12 excluding [the evidence] would serve no deterrent purpose." Id. (citing United States v. Perez-Esparza,
13 609 F.2d 1284, 1289 (9th Cir. 1980). Similarly, in United States v. Garcia, the defendant fled
14 after being ordered to stop at the border. The court found that assuming the stop was illegal, the
15 defendant's flight was voluntary conduct sufficient to attenuate the taint and denied the motion to
16 suppress. 516 F.2d 318, 319 (9th Cir. 1975). The Ninth Circuit recognized that where a suspect's act
17 is the intended result of the illegal police conduct, it is likely tainted; however, "where the illegal
18 conduct of the police is only a necessary condition leading up to the suspect's act, no taint attaches to
19 his conduct." Id. at 320. As the court noted, "By ordering [defendant] to stop, the officer could hardly
20 have intended him to flee." Id. Despite the other factors weighing in favor of suppression in Garcia,
21 the court found the defendant's actions in fleeing sufficiently attenuated any taint. Similarly, in this
22 case, by pulling the driver over for a traffic infraction, Goodrich could hardly have intended that a
23 passenger in the vehicle, Rodriguez, would flee, discarding a firearm during a foot pursuit. Thus,
24 assuming *arguendo* that the initial vehicle stop was illegal, Rodriguez broke the causal connection
25 between the stop and the recovery of evidence by his unprovoked flight during which he discarded the
26 firearm and ammunition eventually recovered from his person once he was apprehended.

27       Finally, the court must weigh the third factor, the purpose and flagrancy of the official
28 misconduct alleged. The Ninth Circuit has instructed that suppression under this prong is warranted "if

the law enforcement officials conducted the illegal search with the purpose of extracting the evidence in question, or if they flagrantly broke the law in conducting the search." Crawford, 323 F.3d at 721. There is nothing in the record to support a finding of any illegal purpose or illegal conduct by Officer Goodrich in (a) conducting the traffic stop; or (b) chasing Rodriguez after his unprovoked flight from the car. Thus, even if the initial stop was not based on reasonable suspicion, Officer Goodrich did not obtain the evidence from Rodriguez through his exploitation of a constitutional violation. Rather, Rodriguez's unprovoked flight and other conduct in evading apprehension and discarding the firearm attenuated the taint of any initial Fourth Amendment violation. Suppression is, therefore, not warranted.

### III.     Suppression of Rodriguez's Identity

Rodriguez's written motion seeks to suppress all evidence relating to his alienage. Motion at 5:9-10. The motion to suppress was filed before the government moved to dismiss the unlawful reentry charge which the district judge granted. Rodriguez did not file a reply brief, and it is unclear whether he seeks to suppress his identity for purposes of the felon in possession charges. The court will assume so for purposes of this report and recommendation.

The Ninth Circuit has clearly resolved this issue. In United States v. Guzman-Bruno, 27 F.3d 420, 421-22 (9th Cir. 1994), the court stated, "A defendant's identity need not be suppressed merely because it is discovered as the result of an illegal arrest or search. . . . The 'body' or identity of a defendant . . . is never itself suppressible as a fruit of an unlawful arrest." Id. (citing INS v. Lopez-Mendoza, 468 U.S. 1032, 1039 (1984). Rodriguez urges the court to find this precedent is not applicable, arguing that Guzman-Bruno incorrectly applied the Supreme Court's holding in Lopez-Mendoza. Specifically, Rodriguez argues that Lopez-Mendoza only stands for the proposition that an illegal arrest does not bar prosecution for a crime. See Motion at 7:13-14. However, other Ninth Circuit precedent applying Lopez-Mendoza and Guzman-Bruno suggests otherwise. See, e.g., United States v. Del Toro Gudino, 376 F.3d 997, 1001-02 (9th Cir. 2004) (stating, "identity evidence is inherently different from other kinds of evidence. . . . We continue to hold today that the simple fact of who a defendant is cannot be excluded, regardless of the nature of the violation leading to his identity"); United States v. Parga-Rosas, 238 F.3d 1209, 1215 (9th Cir. 2001) (fingerprints taken for sole purpose

of identifying defendant were not suppressible, and Fourth Amendment not implicated); <u>United States v. Ramirez-Garcia</u>, 269 F.3d 945 (9th Cir. 2001) (stating, "the information he seeks to suppress, his identity..., cannot be suppressed"). Thus, even if a Fourth Amendment violation occurred which resulted in Rodriguez's identification, proof of who he is does not implicate the Fourth Amendment and may not be excluded as evidence in the trial of this matter.

Based on the foregoing,

**IT IS RECOMMENDED** that the Motion to Suppress (Dkt. #18) be **DENIED.**

Dated this 24th day of August, 2009.

_____
PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE